## Gaston A. Tosi v. Board of Medical Registration

[258 A.2d 581]

No. 53-69

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed October 7, 1969

*Davis, Martin & Free,* Barre, for petitioner.

*James M. Jeffords,* Attorney General and *Richard M. Finn,* Assistant Attorney General, for petitionee.

**Barney, J.** By the agency of this writ of *mandamus* we are being asked to direct the board of medical registration to examine the plaintiff as to his qualification to practice chiropody (podiatry). The board's original refusal was based on its view that the plaintiff's educational background failed to meet the standards required for applicants for examination under the statute.

At the time this issue arose (it was amended in 1969), 26 V.S.A. § 363 provided:

> A person twenty-one years of age, of good moral character, who has received a diploma or certificate of graduation from a legally incorporated, regularly established and recognized school of chiropody, within the United States or within any foreign country, having a minimum requirement of not less than forty-four hundred and eighty scholastic hours together with the successful completion of one year of study in a recognized college of arts and sciences, provided that such applicant shall have, prior to the beginning of the course in chiropody, or registration or matriculation in a recognized school of chiropody, as a minimum requirement for a four years' course in a recognized and reputable high school, or its equivalent, in accordance with the detailed standard set by the board, upon payment of a fee of $25.00, shall be examined, and if found qualified shall be registered and receive a certificate signed by the chairman and secretary of the board.

The facts involved have been the subject of stipulation, or are otherwise uncontested. It appears that the controlling shortcoming, from the board's point of view, relates to the number of scholastic hours requisite for a degree at the school from which the plaintiff graduated, at the time he attended. The quoted statute expressly requires forty-four hundred and eighty scholastic hours, and it is conceded that the requirements for a degree at the plaintiff's school, during his enrollment, were only forty-two hundred and sixty hours. It is not questioned but that the school from which plaintiff received his degree has been, at all relevant times, a regularly constituted and established, recognized and fully accredited school

of chiropody. Nevertheless, based on the statute invoked by the board, the plaintiff's degree does not qualify.

But the situation, as might be expected, is not so simple. The plaintiff has undertaken considerable further study, now claiming a scholastic hour total in excess of fifty-nine hundred. Further, at the time the plaintiff enrolled in his school the requirements of the statute were different.

The plaintiff matriculated in the school of chiropody, from which he, in due course, graduated, on September 23, 1946. At that time the requirement was for a three year course of at least thirty-three hundred sixty scholastic hours. *No. 184 of the Public Acts of 1935*. The course given at his school, in that post war period, was an accelerated course of three years and measured forty-two hundred and sixty scholastic hours. While he was attending this school, but before his graduation in December, 1948, the legislature increased the requirements to forty-four hundred and eighty scholastic hours, effective April 22, 1947. In the exhibits attached to this case, which are acknowledged as part of the undisputed facts, the statement appears with respect to the length in hours of plaintiff's course of study that, "All other podiatry colleges were on the same type and length program at that time."

This certainly suggests that, at least as far as those students who matriculated in such schools before April 22, 1947, and graduated after that, there was no way they could meet the new requirements without repeating their pursuit of a degree, perhaps in the very same school, as soon as it raised its scholastic hour requirements for a degree to the new level. It is perhaps important to note that the present situation is not one brought about by an interruption in schooling, but entirely by a change in the law during a continuing course of study.

■■ Regulation of the practice of trades and professions is a proper exercise of the legislative power. Use of regulatory power as a device for prohibition is not. Thus, we have no difficulty in determining that the legislative intent with respect to standards of training must have been to have them apply to those for whom compliance was possible. This would limit the new standards to those enrolling at least after April 22, 1947, assuming an immediate upgrading in schools. Certainly stand-

ards of timely notice of the requirements could not possibly apply to any student prior to April 22, 1947. To hold otherwise would be to foreclose from examination a certain class of students who, in good faith, undertook to qualify themselves according to the standards then operative, but whose graduation became futile because it fell after April 22, 1947. There is no evidence in the legislation of any intent to have the newer standards operate in the retroactive manner held to bar this plaintiff from examination. It being agreed that he is otherwise fully qualified, he should be examined.

In connection with the additional scholastic hours of credit proffered by the plaintiff, there is a suggestion in the position taken by the board that, in every case, the scholastic hours must all have been received from the school from which the degree or certificate was awarded. It should be noted that this is not a requirement of the statute. In other academic areas accredited institutions often recognize scholastic hour credits transferred from similarly accredited institutions, in determining the accomplishment of degree requirements. It is, however, an appropriate area for the board to examine closely in each such case, to assure itself that the substantive requirements of 26 V.S.A. § 363 have been, as a factual matter, complied with.

*Judgment that the prayer for mandamus is granted. Let a mandate issue directing the state board of medical registration to examine the plaintiff as to his qualification to be registered for the practice of chiropody or podiatry in accordance with the provisions of 26 V.S.A. § 364.*